[Cite as *State v. Potts*, **2014-Ohio-2517.**]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2013CA00168 |
| | : | |
| TODD A. POTTS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:             Appeal from the Stark County Court of
                                    Common Pleas, Case No. 2013-CR-
                                    0085


JUDGMENT:                           AFFIRMED


DATE OF JUDGMENT ENTRY:             June 9, 2014


APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

JOHN D. FERRERO                            RODNEY A. BACA
STARK COUNTY PROSECUTOR                    610 Market Ave. N.
                                           Canton, OH 44702
RONALD MARK CALDWELL
110 Central Plaza South, # 510
Canton, OH 44702-1413

*Delaney, J.*

{¶1} Defendant-Appellant Todd A. Potts appeals his conviction and sentence on one count of Domestic Violence in violation of R.C. 2919.25(A) by the Stark County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} On January 18, 2013, Defendant-Appellant Todd A. Potts was indicted by the Stark County Grand Jury on one count of Domestic Violence, a third degree felony in violation of R.C. 2919.25(A).

{¶3} A jury trial was held on April 23, 2013, but the jury could not reach a unanimous verdict. The trial court declared a mistrial.

{¶4} The case came on for a second jury trial on July 9, 2013. The following evidence was adduced at trial.

{¶5} Michelle Potts ("Michelle") and Todd Potts ("Potts") were married on May 11, 2007. The relationship between Michelle and Potts was difficult. Potts was on post-release control and he was being supervised by the Adult Parole Authority. The Parole Board hearing officer had imposed a no-contact order between Potts and Michelle. In September 2012, the State of Ohio entered into an agreement with Potts for a reunification plan with Michelle. Potts was required to complete individual counseling and the couple was to attend joint marriage counseling.

{¶6} On Friday, December 21, 2012, Potts and Michelle met with the Adult Parole Authority and their mental health treatment providers. Michelle and Potts were hoping for a reunification at Christmas. Richard Baxter, Potts's parole officer, testified the meeting went badly. Baxter described Michelle and Potts as agitated and irate when

it was made clear that Michelle and Potts would not be allowed to reside together. They reached a compromise that Michelle and Potts were allowed telephone contact and a two-hour visit on Christmas at Potts's sister's house to be supervised by Potts's sister.

{¶7}   In contravention of the orders from the Adult Parole Authority, Potts and Michelle remained together after the Friday meeting. Michelle and Potts spent Saturday together shopping for Christmas presents. On Sunday, Michelle and Potts attended a Christmas party together held in Tuscarawas County. Michelle and Potts spent the night together at Michelle's duplex apartment located in Massillon, Ohio.

{¶8}   The morning of Monday, December 24, 2012, Potts and Michelle read the Bible and prayed together before breakfast. Potts then went downstairs to prepare breakfast. After this point, Michelle and Potts testified to a different version of events.

{¶9}   Michelle testified she went into the kitchen to make hot tea. Potts asked her how she would like her eggs prepared. Michelle usually had her eggs prepared over-easy, but she asked Potts to scramble her eggs. Michelle stated Potts became very upset with her and yelled at her, asking why she could not stay consistent. Michelle then tried to stay out Potts's way in the kitchen, but Potts asked for her help. Potts was making waffles and Michelle got the waffles out of the waffle iron. Michelle testified as she did so, Potts yelled at her to get out of his way. Michelle walked out of the kitchen.

{¶10} Michelle heard Potts throw the pan back on the stove. She walked back into the kitchen and removed heated strawberries and syrup from the microwave. She apologized to Potts, trying to deescalate the tension she felt in Potts. They sat down at the table and Michelle could tell Potts was not happy. They started talking and Michelle said she told Potts that he did not need to ruin another holiday. Michelle testified Potts

became upset and stood up. He lifted the table and the plates slid, but did not fall off the table. Potts then poured the heated strawberries on Michelle's head. He next poured the heated syrup and hot tea over her head. She yelled at him to stop. Michelle pushed away from the table. Michelle testified Potts started throwing things off the table. Michelle backed up to the door of the kitchen and Potts pushed her against the door. He picked up a kitchen chair, hit the kitchen ceiling with the chair, and brought the chair down in front of her, cracking it. Potts was swearing and screaming. Michelle testified Potts started repeatedly hitting her in the head with an empty plastic milk jug that was in the kitchen. She could feel his fist through the empty milk jug. He eventually stopped hitting her and dropped the milk jug. Michelle testified she was crying and he continued to yell and scream at her. He then left the kitchen, walked into the living room, and sat down. He told Michelle she needed to pick up the mess in the kitchen, which Michelle immediately started cleaning.

{¶11} As Michelle was cleaning, she put her keys near her purse. Potts gave her a towel to clean herself. Potts sat in the living room and watched her clean, telling her she needed to fix this. As Potts had his head down, Michelle grabbed her purse and keys and left the duplex apartment to go to her car. Potts followed her out of the house and reached her at the car. Michelle testified Potts shoved her against the console and took her keys. He held the keys to her throat and threatened to slit her throat and kill her. Potts dragged her from the car by her hair and pushed her into the apartment.

{¶12} Potts and Michelle were back in the house and Potts pushed her onto the couch. Michelle testified he started hitting her in the head with the milk jug again. She tried to use a pillow to protect her face. She then testified that Potts stopped hitting her.

That evening, after she had showered and they cleaned the kitchen, they went to get a movie. While she was taking a shower, Michelle stated that Potts called his sister to tell her what he did.

{¶13} Potts testified that he was making eggs when Michelle was attempting to flip the waffles. The handle of the waffle maker was broken and when Michelle turned it, the handle fell to the floor. Michelle bumped Potts when she picked up the handle, causing grease to splatter on Potts. He said he yelled in pain and let Michelle know she caused him to suffer a burn. She asked why he was yelling at her and he told her that he was not yelling at her. Potts testified it started to escalate from there. He stated he walked out of the kitchen. Potts walked back into the kitchen and apologized.

{¶14} They put the prepared food on the table and sat down at the table. Potts testified they began to argue after Michelle told him she hoped there was not going to be any drama at Christmas. During the argument, Potts told Michelle he was going to get a divorce. Michelle stated she would not let him divorce her and she wiped the table of the syrup and plates, causing everything to fall to the floor. Potts testified there was no physical altercation on December 24, 2012.

{¶15} In the evening of December 24, 2012, Potts's sister and father visited Michelle and Potts at the apartment. Potts's family tried to convince Potts to leave with them, but he would not.

{¶16} The next day, Michelle and Potts visited Potts's family. Michelle testified she told Potts's family about the assault and showed them the bruises that Potts caused. Michelle left the house and went to a safe location.

{¶17} Potts called and texted Michelle, but Michelle did not respond. Alice Barr, one of Potts's parole officers, contacted Michelle and asked about Christmas. Michelle told her nothing happened.

{¶18} Baxter received a call from one of Potts's family members on December 27, 2012 stating that Baxter that Michelle and Potts were attempting to leave the state and there was an allegation that an assault occurred. The Adult Parole Authority determined to arrest Potts due to his extensive violation history. Baxter contacted Potts and Potts turned himself into the Tuscarawas County Jail.

{¶19} Baxter contacted Michelle on December 28, 2012 and she stated she did not want to press charges against Potts. On January 2, 2013, Michelle contacted Baxter and stated she wanted to press charges against Potts. She gave an 11-page written statement and Baxter took photographs of the bruises she stated were caused by Potts.

{¶20} Baxter went to the Tuscarawas County Jail to serve Potts with papers concerning revocation of his parole. Baxter testified Potts threatened to kill Michelle and her family. Potts testified he made no threatening statement about Michelle to Baxter.

{¶21} The jury found Potts guilty of domestic violence. The trial court sentenced Potts to a prison term of 36 months for his conviction for domestic violence. At the time of his conviction, Potts was on post-release control for a conviction in Carroll County. The trial court ordered Potts to serve a 6-month sentence for the time Potts had remaining on his post-release control to run consecutive with the domestic violence conviction, for a total prison term of 42 months.

{¶22} Potts now appeals his conviction and sentence.

**ASSIGNMENT OF ERROR**

{¶23} Potts raises one Assignment of Error:

{¶24} "THE CONVICTIONS OF THE TRIAL COURT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO PROVE THE CONVICTION BEYOND A REASONABLE DOUBT."

**ANALYSIS**

{¶25} Potts argues in his sole Assignment of Error that his conviction is against the manifest weight and sufficiency of the evidence. We disagree.

{¶26} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins,* 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶27} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing

the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra,* 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶28} Potts was convicted of one count of domestic violence in violation of R.C. 2919.25(A). The statute states, "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶29} In challenging the manifest weight and sufficiency of the evidence, Potts argues Michelle's testimony of the events was not credible. He testified that she was a vindictive person and made up the story. He refers to Alice Barr's testimony when she stated that Michelle had been dishonest with her previously. He further argues there was no physical evidence of the alleged assault. Michelle testified she showed Potts's sister the bruises allegedly caused by Potts, but his sister testified she did not see any bruises, scratches, or burns on Michelle. Baxter, however, took photographs of the bruises on Michelle's arm and shoulder.

{¶30} We have reviewed the entire record and we find the evidence in this case supports the determination of the jury. The jury in this case found the testimony of Michelle to be more credible than Potts. A review of Potts's testimony shows that it conflicted not only with Michelle, but also with Richard Baxter, his parole officer. In reviewing the legal sufficiency of the evidence to support a verdict by the trier of fact, it

is the mind of the trier of fact, rather than the reviewing court, that must be convinced. *State v. Thomas,* 70 Ohio St.2d 79, 434 N.E.2d 1356 (1982). In applying this standard of review, the question of credibility of conflicting testimony and the weight to be accorded certain evidence are matters left primarily to the trier of fact. *State v. Fox,* 5th Dist. Licking No. 13-CA-71, 2014-Ohio-1652, ¶ 18 citing *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility. *Id.* at ¶ 36.

{¶31} Potts's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. Potts's sole Assignment of Error is overruled.

**CONCLUSION**

{¶32} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Wise, J., concur.